# Chicago Building & Manufacturing Company, Appellant, *v.* Browning.

*Corporations—Stock subscription—Conditional subscription.*

When parties stipulate that the capital stock of a corporation shall be subscribed to a certain amount before the contract becomes binding, they are presumed to intend that the subscription shall be valid, and legally enforceable, and a subscription which is not so cannot be considered as coming within the terms of the contract.

In an action upon a contract of subscription to the stock of a prospective corporation, the organization of which was never completed, it appeared that the subscription agreement embodied a contract with the plaintiff, a corporation, under the covenants of which plaintiff was to be paid a certain sum out of the subscriptions, in consideration of which it was to erect certain buildings and machinery.   The subscribers were not

to be bound until subscriptions to the amount which was to be paid to plaintiff had been procured. The agreement further provided that as soon as the full contract price had been subscribed the subscribers should come together and select a committeeman from among their number, who should be taken at the expense of the plaintiff to the Elgin district of Illinois, where he was to make an investigation of the butter and cheese factories established and operated under the system which the plaintiff proposed to introduce, and that if such committeeman did not find that the factories operated upon said system paid twenty per cent per annum upon the capital invested, and that the cows used for supplying the milk to such factories paid from $30.00 to $60.00 per year, then the contract should become null and void. But should the committeeman find evidence of the truthfulness of said statements, then the contract should be considered in full force and binding upon the parties. Another paragraph of the contract provided that as soon as said amount of capital stock was subscribed, the subscribers should become incorporated under the laws of the state of Pennsylvania, and that paragraph contained this distinct and specific covenant: " And it is herein agreed that each subscriber shall be liable to the first party only for the amount subscribed by him and no more." The contract further provided: " The second party agrees to select, describe and furnish at its own expense within ten days of the date of this contract suitable and reasonably level land, with good title and water, ready to connect with pump for the use of said factory. . : . And it is further agreed that in case the said parties should fail to furnish said land and water within ten days of the execution of said contract, the full one-fourth part face value of the total subscriptions to the said contract shall constitute and be a joint liquidated damage to be paid by said parties. *Held*, (1) that the plaintiff was bound to procure solvent persons as subscribers, and could not make a pretense of securing necessary capital through the acceptance of the subscriptions of parties who were known to be insolvent; (2) that defendants were not required to furnish the land until ten days after the committeeman had made an affirmative report; (3) that the failure to furnish the land would be a failure on the part of the proposed corporation, and the right of plaintiff, if any existed, to recover liquidated damages would be against the money which the subscribers had paid into the treasury of the corporation; (4) that no action against the subscribers jointly could be maintained; (5) that as the subscribers never appointed the committeeman, the measure of damages would be the value of the opportunity to present its arguments which the plaintiff lost.

Argued Nov. 6, 1901. Appeal, No. 26, Oct. T., 1901, by plaintiffs, from judgment of C. P. Huntingdon Co., Sept. T., 1899, No. 22, on verdict for defendants in case of the Chicago Building & Manufacturing Company v. W. T. Browning et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for breach of contract.   Before BAILEY, P. J.
The facts appear by the opinion of the Superior Court.

The court charged in part as follows:
[All the associates of the original subscribers were selected
by the plaintiff's agents Sigsworth and Underhill.   None of the
defendants had anything to do with that part of the scheme.
It was, therefore, in our opinion, the duty of the agents of
the "plaintiff to refuse all subscribers who it was known to
them were not in such condition financially that their sub-
scriptions, "if made, could be collectible.   It was the duty of
these agents also to obtain subscriptions only by fair means,
and not by misrepresentation, deceit or falsehood, so that
they could not be enforced if the subscribers would not vol-
untarily pay.   The bona fide subscribers had the right to ex-
pect that their associates would be such as could be compelled
to bear their share of the burden of constructing this cream-
ery.]  [3]
[To sustain this contention the defendants allege that many
of the subscriptions were obtained by false and fraudulent rep-
resentations, concealments and deceits, made for the purpose of
inducing many of them to subscribe to this agreement, and
that at least one of the subscribers was known to the agents
at the time they took the subscription to be utterly insolvent
and to have no property out of which a collection of his sub-
scription could be enforced.]  [4]
[This contract is in writing and before you can set it aside
for any of the reasons alleged by the defendants, the evidence
must be clear, satisfactory and indubitable, and unless the evi-
dence is of such character, in your opinion, the written contract
must stand as binding upon all the parties to it.]  [5]
Plaintiff's points were among others as follows:
3. No one of the defendants have shown by such clear and
satisfactory evidence as the law requires that any fraudulent
representations were made by the plaintiff's agents to induce
him to sign said contract as would relieve him from the per-
formance of the contract, and the verdict of the jury must be
for the plaintiff.   *Answer:* Refused. [1]
4. Under all the evidence in this case the verdict must be
for the plaintiff.   *Answer:* Refused. [2]

Defendants' point was among others as follows:

9. That the contract is a joint and entire contract and is binding upon all the defendants or it is binding upon none, and that if the jury find from the evidence that it is not binding upon one or more of the defendants, the verdict must be for the defendants. *Answer:* Affirmed. [6]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (1–6) above instruction, quoting it.

*H. H. Waite,* for appellant.

*W. H. Woods,* with him *J. M. Woods* and *James S. Woods,* for appellee.

OPINION BY W. D. PORTER, February 14, 1902:

This action was brought against the defendants, thirty-five in number, upon their contract of subscription to the stock of a prospective corporation, under the laws of Pennsylvania, the organization of which was never completed. The subscription agreement embodied a contract with the plaintiff company, under the covenants of which plaintiff was to be paid the sum of $3,950 out of the subscriptions, in consideration of which it was to erect certain buildings and machinery. The subscribers were not to be bound by their contract with the plaintiff until subscriptions to the amount of $3,950 had been procured. The purpose of this stipulation was to make certain that the necessary capital to pay for the buildings had been procured before the plaintiff acquired any rights under the contract; in other words the capital necessary for carrying the contract into execution must be provided before any subscriber became bound. The plaintiff undertook to procure the necessary subscriptions to the capital stock. One of the questions contested in the court below was whether the plaintiff had procured subscriptions to the amount necessary to make the contract binding upon the defendants. It was contended by the defendants that some of the subscriptions had been procured through the fraudulent representations of the plaintiff's agents, that the subscribers thus imposed upon had, upon discovery of the fraud,

rescinded the contracts, and that such subscriptions could not be included in determining the amount of capital stock available for the purposes of the enterprise. When the parties stipulated that capital stock should be subscribed to a certain amount before the contract became binding, they are presumed to have intended that the subscriptions should be valid and legally enforceable, and a subscription which was not so could not be considered as coming within the terms of the contract. As to at least one of the defendants there was sufficient evidence to require the submission to the jury of his right to rescind and his actual rescission of the contract for fraud. When the plaintiffs undertook to procure the subscription of the necessary capital stock they owed a duty to the solvent subscribers to exercise care in the manner in which the subscriptions were taken, and not to accept subscriptions which they had no reasonable grounds to believe would be complied with. It would be a gross fraud upon the solvent stockholders to bind them for the contract price of the entire building by making a pretense of securing the necessary capital through the acceptance of the subscriptions of parties who were known to be insolvent and who, at the time they made the subscriptions, told plaintiff's agent that the money could not be collected. The plaintiff is not seeking to recover for anything done under the contract, for it did nothing but procure subscriptions and then notify the subscribers to meet and organize. It seeks to recover damages, contended to have been liquidated by the contract, for an alleged failure by the defendants to make good their covenants. The defendants produced evidence which required the submission of the disputed question of fact, the amount of the valid subscriptions, to the jury, and the plaintiff has no just ground of complaint of the manner in which that submission was made. The first five and the seventh and eighth specifications of error are dismissed.

The plaintiff had declared on the contract as joint and entire, and in its statement set forth the clause of the contract upon which it relied to recover liquidated damages, in this language: "And it is further agreed that in case the said defendants should fail to furnish said land and water within ten days of the execution of said contract the full one-fourth part face value of the total subscriptions to the said contract shall consti-

tute and be a joint liquidated damage, to be paid by said defendants as such to said plaintiff." The contract upon which the plaintiff relied, was partly printed and partly written, no part of it was dependent upon parol testimony. If the defendants were liable under the clause of the contract upon which the plaintiff relied, their liability was joint and not several, and the sixth specification of error is not well founded: Burgess v. Sherman, 147 Pa. 254.

A careful study of the provisions of the entire contract upon which the plaintiff relied has convinced us that the claim to recover liquidated damages could not, under the evidence produced, be sustained. The agreement provided that as soon as the full contract price had been subscribed the subscribers should come together and select a committeeman from among their number, who should be taken at the expense of the plaintiff to the Elgin district of Illinois, where he was to make an investigation of the butter and cheese factories established and operated under the system which the plaintiff proposed to introduce, and that if such committeeman did not find that the factories operated upon said system paid twenty per cent per annum upon the capital invested, and that the cows used for supplying the milk to such factories paid from $30.00 to $60.00 per year, then the contract should become null and void. But should the commiteeman find evidence of the truthfulness of said statements then the contract should be considered in full force and binding upon the parties. Another paragraph of the contract provided that as soon as said amount of capital stock was subscribed the subscribers should become incorporated under the laws of the state of Pennsylvania, and that paragraph contained this distinct and specific covenant: " And it is herein agreed that each subscriber shall be liable to the first party only for the amount subscribed by him and no more." This last covenant would not at first view seem to be reconcilable with that hereinbefore quoted, relating to joint liquidated damages. The stipulation as to joint liquidated damages refers to the failure of the defendants to furnish land as required by another covenant of the contract, which was in these words: " The second party agrees to select, describe and furnish at its own expense within ten days of the date of this contract suitable and reasonably level land, with good title and water, ready to con-

nect with pump for the use of said factory." That part of the contract which provided that it should not become binding until the committeeman had made an affirmative report, after investigating the conditions existing in Illinois, was in writing, was the expression of the ultimate agreement of the parties after they had considered those portions which were printed, and must control. The defendants were not required to furnish the land until ten days after the committeeman had made an affirmative report, and it was evidently the intention of the parties that the association should have in the mean time become a corporation of the state of Pennsylvania. The failure to furnish the land would be a failure upon the part of the corporate body, and the right of the plaintiff, if any existed, to recover liquidated damages must be against the money which the subscribers had paid into the treasury of the corporation. The subscribers, at the time of their respective subscriptions, did not incur any joint liability, each was liable only for his own subscription. Had there been valid subscriptions to the amount of $3,950, the association was to appoint a representative, to be taken by the plaintiff to Illinois, and the association was at the same time to be incorporated. If the plaintiff succeeded in convincing the representatives of the subscribers of the truthfulness of the representations which had been made, then it became the duty of the corporation to furnish the land. This is the only construction which will reconcile the conflicting covenants of this contract. No steps looking to the incorporation of the subscribers ever were taken and no subscriber ever became liable for more than the amount subscribed by him. It follows that no action against the subscribers jointly could be maintained. The plaintiff staked all its rights under this contract upon its ability to satisfy a committeeman, to be selected by the defendants, that the undertaking would be a money-making venture. The subscribers never appointed the committeeman, and the measure of damages would be the value of the opportunity to present its arguments and evidence which the plaintiff lost.

The judgment is affirmed.